STATE of Minnesota, Respondent,

v.

**Jesse Merlin MINER and Renee Marie Gardner, Appellants.**

No. C6–96–289.

Court of Appeals of Minnesota.

Dec. 10, 1996.

Review Denied Feb. 26, 1997.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Respondent.

Thomas J. Harbinson, Scott County Attorney, Shakopee, for Respondent.

Gary R. Bryant–Wolf, Minneapolis, for Appellants.

Kirk A. Schnitker, Schnitker & Associates, P.A., Minneapolis, for Amici Curiae Minnesota Outdoor Heritage Alliance and Minnesota Bowhunters, Inc.

Lucy A. Dalglish, Timothy E. Branson, Dorsey & Whitney LLP, Kathleen Milner, Minnesota Civil Liberties Union, Minneapolis, for Amicus Curiae Minnesota Civil Liberties Union.

Considered and decided by PETERSON, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

PETERSON, Judge.

Appellants Jesse Miner and Renee Gardner each were charged with one count of harassing a hunter in violation of Minn.Stat. § 97A.037, subd. 1 (1994); one count of disturbing wild animals in violation of Minn. Stat. § 97A.037, subd. 2 (1994); one count of trespassing on public lands in violation of Minn.Stat. § 97A.037, subd. 3 (1994); and one count of trespassing on closed park lands in violation of Hennepin County ordinances. Appellants filed a pretrial motion to dismiss the charges of violating Minn.Stat. § 97A.037 on grounds that the statute was unconstitutional. The district court denied the motion.

Following a jury trial, the trial court dismissed the trespass charges. The jury found appellants guilty of the remaining charges. The trial court stayed the imposition of sentence and placed appellants on probation for one year.

On appeal, appellants argue that their convictions should be reversed because Minn. Stat. § 97A.037 is unconstitutional. This court granted the Minnesota Civil Liberties Union, Minnesota Bowhunters, Inc., and Minnesota Outdoor Heritage Alliance leave to file amicus briefs.

## FACTS

Murphy–Hanrehan Park consists of over 2,000 acres of wooded areas, lakes, potholes, and fields. The park is used for recreational purposes, including mountain biking, horseback riding, hiking, cross-country skiing, and hunting. Every year in November, a bow hunt to control the deer population is held in the park. During the bow hunt, the park is closed to the general public, and only hunters whose names were drawn in a lottery are allowed in the park.

Appellants were among a group of individuals who went to the park during the bow hunt to protest the bow hunt and to talk to hunters to try to get them to change their minds about killing deer. Mark Waletzko, a bow hunter, testified that after he had been in his deer stand about one-half hour, he saw a group of about 13 people dressed in orange congregating in the parking lot. Waletzko testified that as the group approached his deer stand, they scared six deer and caused them to run by Waletzko's deer stand, but Waletzko was unable to shoot at the deer because the group of people was in his way. Waletzko did not think the group saw the deer. Waletzko said that when the group noticed him, someone said, "There's a Bambi killer." Waletzko testified that people in the group said things like, "You don't need the meat," and "You should let the deer live and let nature take its course." After talking to the group for about 15 minutes, Waletzko decided to call the Department of Natural Resources (DNR) to remove the group from the park. Waletzko identified appellants as members of the group he encountered.

Another bow hunter, Alfred Rausch, testified that when he arrived at his deer stand at about 7:00 a.m., he saw a group of people dressed in blaze orange talking, laughing, and carrying on. When the group was near Rausch, the person in front said, "There's a hunter in the tree." The same person then turned on a video camera and asked Rausch why he wanted to kill deer. Rausch testified that he heard people say, "Leave them alone," "Can't you enjoy nature," and "Why do you want to kill the deer?" According to Rausch, when he asked the group about their objective, one individual said, "Our objective here is to have you take all of your things and get out of the woods." When Rausch said he would not be leaving until about 11:00

a.m., the group sat down on a tree beneath his deer stand and talked among themselves. Rausch could not hear what they were saying. Rausch said he counted 12 people in the group. A short time later, about half the group got up and left. Rausch testified that as they were leaving, they grabbed some scent bombs, which Rausch had placed to attract deer, and threw them. Rausch testified that the presence of people under his deer stand interfered with his ability to hunt deer. Gardner was among the individuals who remained near Rausch.

Hennepin County Park Ranger Michael St. John responded to a call about appellants' group being in the park. St. John found a group of eight people walking in an open field in the park. St. John talked to the group briefly and escorted them to the parking lot where Scott County Sheriff's Deputy Mark Hartman issued tab charges to them. Miner was in this group. Hartman and DNR Conservation Officer Scott Carlson then went into the woods to look for the rest of the group. They found six individuals sitting on a log under Rausch's deer stand. When Hartman explained that the group had to leave the park, four people, including Gardner, stepped off the log like they were going to leave. Two people, however, protested about leaving. According to Hartman, the other four did not want to leave without the officers. The officers handcuffed the two who were protesting and escorted the group out of the woods.

## ISSUES

I. Is Minn.Stat. § 97A.037 (1994) an invalid, content-based restriction on the right to freedom of speech and expression as guaranteed by the First Amendment to the United States Constitution?

II. Is Minn.Stat. § 97A.037 a valid time, place, and manner restriction on protected expression?

III. Is Minn.Stat. § 97A.037 unconstitutionally vague or overbroad?

IV. Is Minn.Stat. § 97A.037 unconstitutional as applied to appellants?

## ANALYSIS

### I.

Minn.Stat. § 97A.037 (1994) provides:

Subdivision 1. **Interference with taking wild animals prohibited.** A person who has the intent to prevent, disrupt, or dissuade the taking of a wild animal or enjoyment of the out-of-doors may not disturb or interfere with another person who is lawfully taking a wild animal or preparing to take a wild animal. "Preparing to take a wild animal" includes travel, camping, and other acts that occur on land or water where the affected person has the right or privilege to take lawfully a wild animal.

Subd. 2. **Disturbing wild animals prohibited.** A person who has the intent to prevent or disrupt a person from lawfully taking the animals may not disturb or engage in an activity that will tend to disturb wild animals.

Subd. 3. **Persons intending to harass hunters, trappers, and anglers may not remain on land.** A person who has intent to violate subdivision 1 or 2 may not enter or remain on public lands, or on private lands without permission of the owner.

Subd. 4. **Peace officer order; penalty.** A person must obey the order of a peace officer to stop the harassing conduct that violates this section if the officer observes the conduct. For purposes of this subdivision, "harassing conduct" does not include a landowner's or lessee's action to enforce the trespass law. Violation of this subdivision is a misdemeanor.

Appellants argue that Minn.Stat. § 97A.037 is an invalid, content-based restriction on the exercise of First Amendment rights because only speech or expressive conduct that seeks to dissuade the taking of a wild animal is proscribed by the statute. Speech that disturbs a hunter is not prohibited, appellants contend, if there is no intent to dissuade. To illustrate their argument, appellants cite as an example a trail side vigil that disturbs a hunter. If vigil participants do not intend to prevent or disrupt the taking of a wild animal, they violate the statute

only if they intend to dissuade the taking of a wild animal.

■ Generally, statutes "enjoy a presumption of constitutionality which remains in force until the contrary is established beyond a reasonable doubt." *State v. Casino Mktg. Group, Inc.,* 491 N.W.2d 882, 885 (Minn. 1992), *cert. denied,* 507 U.S. 1006, 113 S.Ct. 1648, 123 L.Ed.2d 269 (1993). However,

> "any provision of law restricting [first amendment] rights does not bear the usual presumption of constitutionality normally accorded to legislative enactments."

*Id.* (alteration in original) (quoting *Johnson v. State Civil Serv. Dep't,* 280 Minn. 61, 66, 157 N.W.2d 747, 751 (1968)).

■ When "deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989), the United States Supreme Court has

> asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it."

*Id.* at 404, 109 S.Ct. at 2539 (alterations in original) (quoting *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974)).

■ Minn.Stat. § 97A.037 appears not to regulate speech in that it prohibits only conduct that disturbs or interferes with another person who is lawfully taking, or preparing to take, a wild animal. But an examination of the plain language of the statute—specifically the word "dissuade"—persuades us that the statute is a content-based regulation of speech and expressive conduct.

"Dissuade" means "[t]o deter (a person) from a course of action or a purpose by persuasion or exhortation." *American Heritage Dictionary* 539 (3d ed. 1992). In turn, "persuade" means "[t]o induce to undertake a course of action or embrace a point of view by means of argument, reasoning, or entreaty," *id.* at 1352, and "exhort" means "[t]o urge by strong, often stirring argument, admonition, advice, or appeal." *Id.* at 642. Combining these meanings, we conclude that

an intent to dissuade the taking of a wild animal means an intent to use argument, reasoning, entreaty, admonition, advice, or appeal to deter the taking of a wild animal. In short, an intent to dissuade the taking of a wild animal means an intent to convey a particular message.

The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid.

*R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992) (citations omitted).

The principal inquiry in determining content neutrality * * * is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.

*Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) (citation omitted).

Even though Minn.Stat. § 97A.037 prohibits only speech or expressive conduct that disturbs or interferes with a person who is taking, or preparing to take, a wild animal, it does not prohibit all such speech. If the speaker has no intent to prevent or disrupt the taking of a wild animal or enjoyment of the out-of-doors, speech that disturbs or interferes with a person taking a wild animal is prohibited by Minn.Stat. § 97A.037 only if the speaker has the intent to dissuade the taking of a wild animal. Such content discrimination within the category of speech that disturbs or interferes with the taking of a wild animal is permitted only if

> the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot.

*R.A.V.,* 505 U.S. at 390, 112 S.Ct. at 2547.

[T]he "danger of censorship" presented by a facially content-based statute requires

that that weapon be employed only where it is *"necessary* to serve the asserted [compelling] interest."

*Id.* at 395, 112 S.Ct. at 2549 (emphasis and second alteration in original) (citation omitted) (quoting *Leathers v. Medlock,* 499 U.S. 439, 448, 111 S.Ct. 1438, 1444, 113 L.Ed.2d 494 (1991) and *Burson v. Freeman,* 504 U.S. 191, 199, 112 S.Ct. 1846, 1852, 119 L.Ed.2d 5 (1992)).

Respondent asserts that the state has an interest in protecting the right of individuals to lawfully take wild animals free from disturbance or interference. Even if we assume that this is a compelling interest, respondent has not explained why a statute that prohibits disturbing speech only if the speaker intends to dissuade the taking of a wild animal is necessary to serve this interest. Absent any explanation why it is necessary to proscribe speech that disturbs or interferes with a person who is taking, or preparing to take, a wild animal only when the speaker intends to dissuade the taking of a wild animal or enjoyment of the out-of-doors, we cannot conclude that there is no realistic possibility that official suppression of ideas is afoot.

To the extent that Minn.Stat. § 97A.037 applies to a person whose only intent is to dissuade the taking of a wild animal or enjoyment of the out-of-doors, its purpose is related to the content of expression. An intent to convey a particular message is an element of the criminal offense created by the statute. Minn.Stat. § 97A.037 does not have only an incidental effect on some speakers or messages but not others. The statute expressly applies to a person because the person intends to convey a particular message. *See Smith v. Goguen,* 415 U.S. 566, 588, 94 S.Ct. 1242, 1254, 39 L.Ed.2d 605 (1974) (White, J., concurring in judgment) (statute prohibiting contemptuous treatment of flag encompassed expressive conduct and punished for communicating ideas about flag). We, therefore, conclude that to the extent that Minn.Stat. § 97A.037 applies to a person whose only intent is to dissuade the taking of a wild animal or enjoyment of the out-of-doors, the statute is impermissibly content-based.

This conclusion, however, does not mean that Minn.Stat. § 97A.037 is invalid in its entirety.

Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Minn.Stat. § 645.20 (1996).

■ We do not find that the remaining provisions of Minn. Stat § 97A.037 are so essentially and inseparably connected with the provision relating to an intent to dissuade that the legislature would not have enacted the remaining provisions without the intent to dissuade provision. Although Minn.Stat. § 97A.037 cannot be applied when a person acts only with an intent to dissuade, it remains complete and capable of being executed when a person, acting with intent to prevent or disrupt the taking of a wild animal or enjoyment of the out-of-doors, disturbs or interferes with another person who is lawfully taking a wild animal or preparing to take a wild animal.

## II.

■ Appellants next argue that Minn.Stat. § 97A.037 fails to meet the requirements of a valid time, place, and manner restriction of protected expression. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983) (discussing state's right to enforce regulations of time, place, and manner of expression). We will address this argument in light of our partial invalidation of the statute. The remaining provisions of Minn.Stat. § 97A.037 make it a crime for any person to disturb or interfere with another

584

person who is lawfully taking or preparing to take a wild animal if the person acts with intent to prevent or disrupt the taking of a wild animal or enjoyment of the out-of-doors. It is immaterial whether a person who disturbs or interferes with a hunter intends the disturbance or interference to express an idea. On its face, the modified statute deals with conduct having no connection with speech; it does not restrict protected expression. We therefore conclude that the modified statute is not a facially invalid time, place, and manner restriction of protected expression.

## III.

■ Appellants next contend that Minn. Stat. § 97A.037 is unconstitutionally overbroad and vague. We will consider this contention in light of our partial invalidation of the statute.

> The overbreadth doctrine recognizes the right of a person whose own speech or expressive conduct is not constitutionally protected to challenge a statute on its face if the statute sweeps too broadly, reaching a substantial amount of constitutionally protected activity as well as unprotected activity.

*State v. Krawsky,* 426 N.W.2d 875, 876 (Minn.1988).

> If the overbreadth is 'substantial,' the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation.

*Id.* (quoting *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503–04, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985)). The court may narrowly construe a statute to uphold its constitutionality. *In re Welfare of S.L.J.,* 263 N.W.2d 412, 419 (Minn.1978).

> A clear and precise enactment may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct. * * * The crucial question, then, is whether the [enactment] sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments.

*Grayned v. City of Rockford,* 408 U.S. 104, 114–15, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972).

> [A]n enactment is void for vagueness if its prohibitions are not clearly defined. * * * First, * * * we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. * * * Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. * * * Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms."

*Id.* at 108–09, 92 S.Ct. at 2298–99 (footnotes omitted) (second and third alterations in original) (quoting *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964) and *Cramp v. Board of Public Instruction,* 368 U.S. 278, 287, 82 S.Ct. 275, 281, 7 L.Ed.2d 285 (1961)).

Appellants contend Minn.Stat. § 97A.037 is vague because it does not define "preparing to take a wild animal." In *Dorman v. Satti,* 862 F.2d 432, 436–37 (2d Cir.1988), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989), the court struck down Connecticut's hunter harassment statute as vague and overbroad. The court emphasized that the statute did not define "acts in preparation" and thus reached "a wide range of activities confined to no particular, time, place, or manner." *Id.* at 437. The court noted that the statute could apply to buying supplies long before the actual hunt or even making hunting plans during a workplace coffee break. *Id.*

■ Unlike the Connecticut statute, Minn. Stat. § 97A.037, subd. 1, provides:

> "Preparing to take a wild animal" includes travel, camping, and other acts that occur on land or water where the affected person has the right or privilege to take lawfully a wild animal.

Although this provision includes a potentially wide range of activity, it limits application of Minn.Stat. § 97A.037 to times when and places where taking a wild animal is legal.

*See State v. Bagley,* 164 Wis.2d 255, 474 N.W.2d 761, 766 (App.1991) (acts preparatory to lawful hunting defy precise definition, but lack of precise definition did not render statute unconstitutionally vague; whether hunter was engaged in act in preparation for lawful hunting was fact question).

Appellants also argue that the statute is vague because it does not define the term "disturb" and what disturbs a hunter depends on the hunter's subjective reaction to an act. As we construe Minn.Stat. § 97A.037, however, its application is limited to conduct that intrudes upon a person who is taking, or preparing to take, a wild animal and causes that person to be distracted from that activity. *See American Heritage Dictionary* 542 ("disturb" means "[t]o break up or destroy the tranquility or settled state of"). Although one person may be more easily distracted than another, whether a person is, in fact, distracted is not a subjective determination.

Furthermore, Minn.Stat. § 97A.037 requires the state to prove that the defendant acted with intent to prevent or disrupt the taking of a wild animal or enjoyment of the out-of-doors. Conduct that disturbs or interferes with a person who is preparing to take a wild animal is not prohibited unless the conduct is performed with the intent to prevent or disrupt the taking of an animal. Requiring that the intent of the defendant be demonstrated significantly narrows the application of the statute. *See Krawsky,* 426 N.W.2d at 877 (intent element a necessary precondition to determination that statute is not facially overbroad). A person of ordinary intelligence can understand that the statute prohibits conduct that is intended to prevent or disrupt the lawful activity of others and may act accordingly. *See State v. Hipp,* 298 Minn. 81, 82, 88–89, 213 N.W.2d 610, 612, 615 (1973) (person of common understanding can know what is forbidden by statute that prohibits assembly of three or more persons who "conduct themselves in a disorderly manner as to disturb or threaten the public peace").

Appellants argue that Minn.Stat. § 97A.037 is overbroad because it reaches protected First Amendment speech. Citing

*Dorman,* appellants argue the statute is not subject to a narrowing construction. As we have already stated, Minn.Stat. § 97A.037, as modified by our partial invalidation, does not impermissibly restrict First Amendment rights. Therefore, it is not facially overbroad.

## IV.

Finally, appellants argue that even if Minn. Stat. § 97A.037 is not facially invalid, it is unconstitutional as applied to them because they were engaging in constitutionally protected speech when they were arrested. They state that they had a polite conversation with two hunters, did not raise their voices or use any fighting words, and left the park when asked to do so by law enforcement authorities.

■ Even if we assume that appellants intended to express an idea by their conduct, the United State Supreme Court has rejected

> the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.

*United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

> [W]hen "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. * * * [A] governmental regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the interest.

*Id.* at 376–77, 88 S.Ct. at 1678–79.

Minn.Stat. § 97A.037 meets all of these requirements. The legislature possesses

> unquestioned authority to declare which acts or what course of conduct shall be deemed inimical to the public welfare so as

to constitute a crime and to establish the appropriate punishment therefor.

*State v. Mathiasen,* 273 Minn. 372, 378, 141 N.W.2d 805, 810 (1966).

Minn.Stat. § 97A.037 furthers the important governmental interest in regulating the taking of wild animals and protecting the right of individuals to hunt, fish, or otherwise take wild animals. *See* Minn.Stat. §§ 97A.015, subd. 47 (1994) (" '[t]aking' means pursuing, shooting, killing, capturing, trapping, snaring, angling, spearing, or netting wild animals * * *"); 97A.025 (1994) (state owns wild animals of the state in its sovereign capacity for benefit of all people of the state). The state's interest in regulating the taking of wild animals and protecting the right of individuals to take wild animals is not related to the suppression of free expression.

Finally, the incidental restriction of alleged First Amendment freedoms is no greater than is essential to further the state's interest in protecting the right of individuals to take wild animals. As modified by this court, Minn.Stat. § 97A.037 restricts only conduct that both (1) disturbs or interferes with a person who is taking, or preparing to take, a wild animal, and (2) is intended to prevent or disrupt the taking of a wild animal or enjoyment of the out-of-doors. The modified statute restricts speech only when it is intended to directly interfere with the lawful exercise of individual rights, or when it accompanies conduct that is intended to interfere with the lawful exercise of individual rights.

Even if applying Minn.Stat. § 97A.037 to appellants infringes on their right to express their opposition to the taking of wild animals, any infringement on this right is an incidental restriction that is no greater than necessary to further the state's interest in protecting the right of individuals to lawfully take wild animals. Appellants' right to express their opposition to the taking of wild animals does not include the right to do so in a manner that disturbs or interferes with another's right to lawfully take wild animals. The evidence submitted at trial demonstrates that appellants disturbed others who were taking, or preparing to take, a wild animal

and that they did so with the intent to disrupt the taking of a wild animal.

## DECISION

Minn.Stat. § 97A.037 may not constitutionally be applied to a person whose only intent is to dissuade the taking of a wild animal or enjoyment of the out-of-doors because, when so applied, its purpose is related to the content of expression. The provision of Minn. Stat. § 97A.037 relating to an intent to dissuade restricts the freedom of expression guaranteed by the First Amendment and is invalid. The remaining provisions of Minn. Stat. § 97A.037 are severable; are not unconstitutionally overbroad or vague; and do not constitute an invalid time, place, and manner restriction of protected expression. Because Minn.Stat. § 97A.037, as construed by this opinion, is not unconstitutional as applied to appellants, their convictions are affirmed.

**Affirmed.**