731 A.2d 64 (1999)
322 N.J. Super. 359
Gloria BINKOWSKI, Henry Furst and Robert Kelman, Plaintiffs-Appellants,
v.
STATE of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1999.
Decided June 24, 1999.
*67 Anna E. Charlton of the New York bar, admitted pro hac vice, for plaintiffs-appellants (Gary L. Francione, attorney; Ms. Charlton, on the brief).
Barbara Conklin, Deputy Attorney General, for defendant-respondent (Peter Verniero, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Conklin, on the brief).
Before Judges MUIR, Jr., EICHEN and COBURN. *65
*66 The opinion of the court was delivered by EICHEN, J.A.D.
In 1993, the New Jersey Legislature enacted a statute entitled "An Act concerning the taking of wildlife, and supplementing Title 23 of the Revised Statutes." L. 1993, c. 11 (codified at N.J.S.A. 23:7A-1 to -3). The Act is commonly referred to as the Hunter Harassment Statute (the Hunter Harassment Statute or the statute).[1] Section 2 is entitled "Hindering or preventing the lawful taking of wildlife prohibited; specified acts prohibited" and provides in part:
No person may, for the purpose of hindering or preventing the lawful taking of wildlife:
a. block, obstruct, or impede, or attempt to block, obstruct, or impede, a person lawfully taking wildlife;
b. erect a barrier with the intent to deny ingress to or egress from areas where wildlife may be lawfully taken;
c. make, or attempt to make, unauthorized physical contact with a person lawfully taking wildlife;
d. engage in, or attempt to engage in, theft, vandalism, or destruction of personal or real property;
e. disturb or alter, or attempt to disturb or alter, the condition or authorized placement of personal or real property intended for use in the lawful taking of wildlife;
f. enter or remain upon public lands or waters, or upon private lands or waters without permission of the owner thereof or an agent of that landowner, where wildlife may be lawfully taken;
g. make or attempt to make loud noises or gestures, set out or attempt to set out animal baits, scents, or lures or human scent, use any other natural or artificial visual, aural, olfactory, or physical stimuli, or engage in or attempt to engage in any other similar action or activity, in order to disturb, alarm, drive, attract, or affect the behavior of wildlife or disturb, alarm, disrupt, or annoy a person lawfully taking wildlife; or
h. interject himself into the line of fire of a person lawfully taking wildlife.

[N.J.S.A. 23:7A-2.]
The statute allows the State to seek injunctive relief and civil penalties against violators, authorizes a private cause of action for damages, and permits prosecutions for petty disorderly persons offenses. N.J.S.A. 23:7A-3.
On December 5, 1996, plaintiffs, who contend they are persons interested in the protection of animals in New Jersey,[2] filed a complaint against the State of New Jersey seeking a declaratory judgment declaring the statute unconstitutional on its face and enjoining the State from enforcing its provisions. The complaint alleges that the statute violates the state and federal *68 constitutions because it is overbroad, vague and impermissibly content-based, impinging on their constitutional right to free speech and assembly. The complaint also alleges that the statute violates equal protection of the laws and interferes with plaintiff Gloria Binkowski's free exercise of religion.[3] At oral argument, plaintiffs conceded that their challenge to the statute is limited to subsections (a) and (g) of N.J.S.A. 23:7A-2.
On September 27, 1997, the Law Division heard oral argument on the parties' cross-motions for summary judgment and, on February 2, 1998, granted the State's motion to dismiss plaintiffs' complaint. In granting the State's motion, the judge determined that, on its face, the statute does not regulate speech or expressive conduct but is directed at prohibiting physical interference with hunters by those who have the intent to interfere with the lawful taking of wildlife.
Accordingly, the judge impliedly found the statute was not facially unconstitutional by its express terms. The judge also determined that the statute was not unconstitutional on the grounds of vagueness or overbreadth. He further concluded that the statute did not violate the Equal Protection Clause or interfere with the free exercise of plaintiff Binkowski's religion.
On appeal, as below, plaintiffs acknowledge that they have not challenged the statute "as applied." Indeed, none of the plaintiffs have engaged in any conduct proscribed by the statute, nor have they been charged with its violation. Their argument is that, on its face, the statute is an unconstitutional restriction on speech because it has only one purpose in mind: to regulate viewpoint. Plaintiffs maintain that those who convey the anti-hunting message will be subject to punishment, while proponents of hunting will not. They therefore contend the statute is an impermissible content-based regulation of speech and "expressive conduct" in violation of the First Amendment and New Jersey's constitution.
Defendants counter that the statute on its face regulates intentionally harassing conduct, irrespective of viewpoint, not speech; but that even if the statute does incidentally burden plaintiffs' speech, the regulation should not be invalidated on a facial challenge. See United States v. O'Brien, 391 U.S. 367, 375, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679 (1968).

I.
We begin our analysis by observing that "whenever a challenge is raised to the constitutionality of a statute, there is a strong presumption that the statute is constitutional." State v. Muhammad, 145 N.J. 23, 41, 678 A.2d 164 (1996). The party "challenging the constitutionality of a statute bears the burden of establishing its unconstitutionality." State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998). Indeed, in analyzing the constitutionality of a statute "[o]ne of the basic guidelines ... is `the presumption that the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner.'" NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 26, 543 A.2d 10 (1988) (quoting State v. Profaci, 56 N.J. 346, 349, 266 A.2d 579 (1970)).

II.
The First Amendment of the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend I. This provision applies to the states under the Due Process Clause of the Fourteenth Amendment. E.g., Schneider v. New Jersey, 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155, 164 (1939). Article I, paragraph 6 of the New Jersey Constitution states: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible *69 for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press."
The New Jersey Supreme Court "ordinarily interpret[s] our State Constitution's free speech clause to be no more restrictive than the federal free speech clause...." Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 264, 716 A.2d 1137 (1998) (citation omitted). Accordingly, we "rely on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution." Ibid. (quoting Karins v. City of Atlantic City, 152 N.J. 532, 547, 706 A.2d 706 (1998)).
Where, as here, claimants challenge the validity of a statute under the First Amendment, "[t]here are two quite different ways in which a statute ... may be considered invalid `on its face'either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally `overbroad.' " Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772, 781 (1984); accord New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1, 14 (1988); see also New York v. Ferber, 458 U.S. 747, 768 n. 21, 102 S.Ct. 3348, 3360 n. 21, 73 L.Ed.2d 1113, 1130 n. 21 (1982). Either way, in advancing a facial challenge to the constitutionality of a statute, the challenger confronts "a heavy burden." Rust v. Sullivan, 500 U.S. 173, 183, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233, 249 (1991) (recognizing that a claimant making a facial challenge "must establish that no set of circumstances exists under which the Act would be valid" (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707 (1987))).

A.
As earlier noted, plaintiffs argue that the Hunter Harassment Statute regulates the content of speech because it punishes those who espouse an anti-hunting message. We disagree. By its terms, the statute plainly regulates conduct. Further, the regulated conduct is not sufficiently expressive to constitute speech. Examining the statute on its face, we conclude that it only seeks to proscribe physical interference with the lawful taking of wildlife.
Conduct does not constitute speech simply because the actor intends to convey a message thereby. O'Brien, supra, 391 U.S. at 376, 88 S.Ct. at 1678, 20 L.Ed.2d at 679. Otherwise, "an apparently limitless variety of conduct [could] be labeled `speech' whenever the person engaging in the conduct intends thereby to express an idea." Ibid. Indeed, "[v]irtually any law enacted by a State, when viewed with sufficient ingenuity, could be thought to interfere with some citizen's preferred means of expression." Spence v. Washington, 418 U.S. 405, 417, 94 S.Ct. 2727, 2734, 41 L.Ed.2d 842, 851 (1974) (Rehnquist, J., dissenting).[4] Nonetheless, the
*70 United States Supreme Court has "acknowledged that conduct may be `sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments,'" Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342, 353 (1989) (quoting Spence, supra, 418 U.S. at 409, 94 S.Ct. at 2730, 41 L.Ed.2d at 846). Whether conduct is "sufficiently imbued with elements of communication" depends largely on the context in which the conduct occurs and on whether the actor has "[a]n intent to convey a particularized message ... [as well as] ... the likelihood ... that the message would be understood by those who viewed it," Roulette v. City of Seattle, 97 F.3d 300, 303 (9th Cir.1996) (en banc) (quoting Spence, supra, 418 U.S. at 410-11, 94 S.Ct. at 2730, 41 L.Ed.2d at 847) (first alteration and second ellipsis in original).
Roulette involves a facial challenge to the validity of a city ordinance prohibiting "sitting" or "lying" on sidewalks during certain hours of the day. Judge Kozinski, speaking for a majority of the Ninth Circuit Court of Appeals en banc, concluded that, although sitting can possibly be expressive, that "isn't enough to sustain plaintiffs' facial challenge to the Seattle ordinance." Id. at 303. In this regard, Judge Kozinski explained:
It's true that our ordinary reluctance to entertain facial challenges is somewhat diminished in the First Amendment context. See, e.g., Massachusetts v. Oakes, 491 U.S. 576, 581, 109 S.Ct. 2633, 2637, 105 L.Ed.2d 493 (1989). However, this is because of our concern that "those who desire to engage in legally protected expression ... may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 2801-02, 86 L.Ed.2d 394 (1985). Consistent with this speech-protective purpose, the Supreme Court has entertained facial freedom-of-expression challenges only against statutes that, "by their terms," sought to regulate "spoken words," or patently "expressive or communicative conduct" such as picketing or handbilling. See Broadrick v. Oklahoma, 413 U.S. 601, 612-13, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 [(1973)]. Seattle's ordinance does neither. By its terms, it prohibits only sitting or lying on the sidewalk, neither of which is integral to, or commonly associated with expression.
[Id. at 303-04 (footnotes omitted) (emphasis added).]
Employing this approach, it is plain that the Hunter Harassment Statute by its express terms prohibits only conduct that is not "integral to or commonly associated with expression." The statute sets forth a core of easily identifiable and constitutionally proscribable conduct. Specifically, it prohibits a person, "for the purpose of hindering or preventing the lawful taking of wildlife," from "block[ing], obstruct[ing], or imped[ing], or attempt[ing] to block, obstruct or impede a person lawfully taking wildlife." N.J.S.A. 23:7A-2a. It also prohibits a person from "mak[ing] or attempt[ing] to make loud noises or gestures," or from performing a number of other physical activities "in order to disturb, alarm, drive, attract, or affect the behavior of wildlife or disturb, alarm, disrupt, or annoy a person lawfully taking wildlife." N.J.S.A. 23:7A-2g.
Further, we are convinced that the statute is not intended to favor pro-hunting advocates because there is a myriad of purposes behind the Legislature's decision to regulate hunting. See Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661, 675 (1989) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages and not others.").
*71 For instance, at least as to the deer population, the State maintains that "[h]unting has been and continues to be the major deer population control methodology employed by the Division [of Fish, Game and Wildlife] to maintain numbers at levels that minimize adverse impacts to both native vegetation and croplands."[5] The State further asserts that controlling the excessive deer population is necessary to reduce the escalating "[p]roperty damage and personal injury due to deer-auto collisions." It also certified that the State budget is benefitted through license fees, the proceeds of which contributes to further acquisition of green acres properties. Hence, even if the purpose of the statute is not evident on its face, it is clear that the purpose is not to protect the hunter from the anti-hunting viewpoint, but to advance public safety and welfare.
Judge Kozinski points out in Roulette that no case decided by the United States Supreme Court after Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973),[6] a facial overbreadth case, has entertained a facial challenge under the First Amendment against a statute unless by its express terms it sought to regulate spoken words or patently expressive conduct. Roulette, supra, 97 F.3d at 303 & n. 6. Indeed, virtually all of the "expressive conduct" First Amendment cases decided by the United States Supreme Court are "as applied" cases, not cases involving facial challenges to the terms of the statute as plaintiffs make here.[7] The fact that plaintiffs can argue that, in some worst case scenario, they may be charged with a violation of the statute for doing one of the proscribed statutory acts while expressing their anti-hunting message does not mean the entire statute should be struck down as facially invalid.
Even in a First Amendment case, federal courts are admonished not "to anticipate a question of constitutional law in advance of the necessity of deciding it, ... [or] to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 501, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394, 404 (1985) (quoting United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1969)) (observing that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it.)
Although New Jersey courts are not bound by the "case and controversy" requirement of the federal constitution, U.S. Const. art. III, § 2, cl. 1, we similarly "will not render advisory opinions or function in the abstract...." Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107, 275 A.2d 433 (1971); see also New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 409-10, 686 A.2d 1265 (App.Div.1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297 (1998). We recognize that plaintiffs bring the present action under the Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, the purpose of which "is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," N.J.S.A. 2A:16-51. Nonetheless, even when a declaratory judgment is sought, we are admonished not to "decide a case based on facts which are undeveloped or uncertain." New Jersey Ass'n for Retarded Citizens, Inc. v. New Jersey *72 Dep't of Human Servs., 89 N.J. 234, 241, 445 A.2d 704 (1982).
Applying these principles here, we decline to act as a "roving commission," Broadrick, supra, 413 U.S. at 610-11, 93 S.Ct. at 2915, 37 L.Ed.2d at 839, and decide the constitutionality of the Hunter Harassment Statute based on hypothetical facts where it is reasonably arguable that the proscribed conduct has nothing to do with speech. See O'Brien, supra, 391 U.S. at 375, 88 S.Ct. at 1678, 20 L.Ed.2d at 679. Notably, plaintiffs have never specified what conduct they would like to pursue that the statute unconstitutionally prohibits. Nor are we guided by the actual application of the statute in those cases prosecuted by the State. Indeed, the record reflects that enforcement of the statute to date has been limited to prosecution of persons based solely on their conduct. For instance, the record contains summonses issued against a hunter for scaring away a rival's game and against a property owner who stole his neighbor's hunting gear because he objected to his neighbor's hunting "too close to his property line."
In sum, we cannot say that the terms of the Hunter Harassment Statute themselves contain a constitutional infirmity that renders the statute facially invalid. Essentially, what plaintiffs argue, without expressly stating so, is that the Hunter Harassment Statute is unconstitutional in all of its applications. See Salerno, supra, 481 U.S. at 745, 107 S.Ct. at 2100, 95 L.Ed.2d at 707. That position is not supported by the record and is rejected. Accordingly, we hold the statute is a valid regulation of conduct on its face.

B.
We next address plaintiffs' facial overbreadth challenge to the statute. This challenge presents somewhat similar, and yet slightly different concerns from those previously discussed.
Generally, the test for when a court can invalidate a statute on its face for overbreadth under the First Amendment and our State Constitution is whether the statute "reaches a substantial amount of constitutionally protected conduct." State v. Mortimer, 135 N.J. 517, 530, 641 A.2d 257 (quoting City of Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410 (1987)), cert. denied, 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994).
In Broadrick, supra, the United States Supreme Court stated that "particularly where conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." 413 U.S. at 615, 93 S.Ct. at 2918, 37 L.Ed.2d at 842. "In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Taxpayers for Vincent, supra, 466 U.S. at 801, 104 S.Ct. at 2126, 80 L.Ed.2d at 784; accord New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 66, 411 A.2d 168 (1980).
Facial invalidation "is, manifestly, strong medicine" that "has been employed by the Court sparingly and only as a last resort." It is, in fact, "an exception to our traditional rules of practice." Broadrick, supra, 413 U.S. at 613, 615, 93 S.Ct. at 2916-17, 37 L.Ed.2d at 841-42; see also FW/PBS, Inc. v. Dallas, 493 U.S. 215, 223, 110 S.Ct. 596, 603, 107 L.Ed.2d 603, 616-17 (1990) (noting that "facial challenges to legislation are generally disfavored"). Hence, "[t]o prevail, respondents must demonstrate a substantial risk that application of the provision will lead to the suppression of speech." National Endowment for the Arts v. Finley, 524 U.S. 569, ___, 118 S.Ct. 2168, 2175, 141 L.Ed.2d 500, 511 (1998).
*73 And, as the behavior at issue "moves from `pure speech' towards conduct... even if expressive," the exception attenuates. Ibid. Consequently, as the Broadrick Court recognized:
Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effectat best a prediction cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.[8]
[Id. at 615, 93 S.Ct. at 2917-18, 37 L.Ed.2d at 842.]
Thus, as a form of facial challenge, the overbreadth doctrine stands for the proposition that ordinarily courts will not examine the constitutionality of a statute in the abstract without reference to specific conduct. State v. Colon, 186 N.J.Super. 355, 358, 452 A.2d 700 (App. Div.1982). This salutary rule "rests on the principle that legislative acts are presumptively valid and will not be overturned on the basis of hypothetical cases not actually before the court." State v. Saunders, 75 N.J. 200, 208-09, 381 A.2d 333 (1977).
Plaintiffs contend that "[t]he hunter harassment statute clearly implicates a substantial amount of constitutionally protected conduct." Plaintiffs claim they have demonstrated a substantial risk that their speech will be suppressed if the statute is not declared facially unconstitutional. They maintain the statute "focuses on one particular form of disfavored speech the anti-hunting message" and consequently, it has a "chilling effect" on the right to freely communicate the message to a hunter while he is hunting.
However, plaintiffs do not demonstrate how the statute has a "deterrent effect on legitimate expression [that] is real and substantial." See New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, supra, 82 N.J. at 66, 411 A.2d 168 (quoting Young v. American Mini Theatres, Inc., 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310, 320 (1976) (ellipses omitted)); accord Broadrick, supra, 413 U.S. at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842. Instead, plaintiffs leave it to us to speculate as to the circumstances under which the statute might infringe upon an individual's "constitutional rights to free speech, expressive conduct, and assembly." We decline to do so.
The United States Supreme Court "has... repeatedly expressed its reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied." Parker v. Levy, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439, 460 (1974) (quoting CSC v. Letter Carriers, 413 U.S. 548, 580-81, 93 S.Ct. 2880, 2897-98, 37 L.Ed.2d 796, 817 (1973)). Lest we forget, the statute on its face does not inhibit the exposition of ideas; it simply bans physical conduct which may or may not be protected by the First Amendment. "[E]ven if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the `remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct....'" Ibid. (ellipses in original).
Additionally, the statute is not overbroad because we construe it to prohibit harassment of the hunter (1) only in places where wildlife may be found or in immediate proximity thereto, and (2) where the *74 actor's intent is to interfere with the lawful taking of wildlife. Indeed, the trial court construed the statute limiting its scope to periods and places where persons are actually hunting and fishing. We agree with that construction and apply the definition of "hunting" formulated in State v. Meinken, 10 N.J. 348, 91 A.2d 721 (1952).
In Meinken, the Court construed N.J.S.A. 23:4-44 which regulates the types of weapons allowed for hunting deer. It stated that "[g]enerally speaking the term `hunting' means the act of searching for, pursuing or chasing game." 10 N.J. at 353, 91 A.2d 721. The Meinken Court held that a person was "hunting" within the meaning of N.J.S.A. 23:4-44 when three factors are met: "(1) physical presence in an area where game is believed to be or may be expected to be found; (2) possession of the necessary equipment with which to capture or kill game; and (3) the intention of capturing or killing game if and when the opportunity presents itself." Ibid. Because we read the sections of Title 23 in pari materia, we apply the same definition of "hunting" to the Hunter Harassment Statute.[9]See Mimkon v. Ford, 66 N.J. 426, 433, 332 A.2d 199 (1975) ("[S]tatutes which deal with the same matter or subject, and which seek to achieve the same overall legislative purpose, ... should and must be read in pari materia." (citations omitted)). This construction places a reasonable limitation on the reach of the Hunter Harassment Statute in that it circumscribes the area where protestors may not be free to express their anti-hunting ideas, while preserving areas outside the immediate proximity of the hunting grounds for that purpose.
"In appropriate cases, a court has the power to engage in `judicial surgery' or the narrow construction of a statute to free it from constitutional doubt or defect." New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, supra, 82 N.J. at 75, 411 A.2d 168; accord Hamilton Amusement Ctr., supra, 156 N.J. at 280, 716 A.2d 1137. "[A] narrow and discriminate construction of the key terms of the legislation serves to overcome its major overbreadth objections." New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, supra, 82 N.J. at 81, 411 A.2d 168. By narrowing construction of the statute in this way we avoid the possibility of ensnaring a substantial amount of constitutionally protected conduct within the scope of the statute.
Numerous other jurisdictions have considered the constitutionality of their hunter harassment laws. In some instances they have upheld the laws after narrowly construing their statutes and severing overbroad language. For instance, in State v. Miner, 556 N.W.2d 578 (Minn.Ct. App.1996), Minnesota's intermediate appellate court held its hunter harassment statute constitutional on a facial challenge of overbreadth after construing the statute to eliminate the intent requirement "to dissuade" because it concluded the term was an invalid, content-based restriction on the exercise of First Amendment rights. Id. at 583. It explained the provision was invalid because it proscribed only speech or expressive conduct seeking to dissuade the taking of a wild animals. Ibid.; accord People v. Sanders, 182 Ill.2d 524, 231 Ill. Dec. 573, 696 N.E.2d 1144, 1148 (1998) (excising "intent to dissuade" from Illinois' Hunter Interference Prohibition Act) ("Subjecting to criminal liability expression which is made with an intent to dissuade, while failing to threaten punishment for expressions intended to encourage or persuade, constitutes an illegal legislative censure of opinion."); but see State v. Lilburn, 265 Mont. 258, 875 P.2d 1036, 1040-41 (1994) (holding Montana's hunter harassment statute constitutional on challenge of facial overbreadth after construing phrase *75 "intent to dissuade" as content-neutral); cf. Dorman v. Satti, 862 F.2d 432 (2d Cir.1988) (holding Connecticut's hunter harassment statute vague and overbroad because it "is not subject to curative construction"), cert. denied, 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989); see also State v. Casey, 125 Idaho 856, 876 P.2d 138 (1994) (holding Idaho's hunter harassment statute unconstitutionally overbroad because it impermissibly regulated the viewpoint of an anti-hunting advocate); Opinion of the Justices, 128 N.H. 46, 509 A.2d 749 (1986) (stating that proposed hunter harassment bill was overbroad and therefore objectionable under the New Hampshire State constitution because "critical terms" of the bill were left undefined) (advisory opinion); State v. Bagley, 164 Wis.2d 255, 474 N.W.2d 761 (Ct.App.1991) (holding Wisconsin's hunter harassment statute constitutional on facial overbreadth challenge).
New Jersey's Hunter Harassment Statute does not suffer the constitutional infirmities of the statutes criticized in Miner and Sanders. The Miner court determined that the words "intent to dissuade" were a content-based restriction on speech which could only be constitutional if it was necessary to serve a compelling state interest. 556 N.W.2d at 578. In contrast to the Minnesota statute, the New Jersey statute's intent requirement narrows its scope without implicating speech. Only conduct pursued with the general purpose of "hindering or preventing the lawful taking of wildlife" and the specific intent "to disturb, alarm, disrupt, or annoy a person lawfully taking wildlife," N.J.S.A. 23:7A-2g, is punishable. Thus, as the State maintains:
[S]ounds emanating from lawful activity such as walking through the woods, or the laughter of picknickers, or the slamming of a car door might scare away deer or `disturb' a hunter but would not run afoul of the Hunter Interference law since these noises or actions would not at least not on their facebe undertaken with the requisite intent needed to implicate the statutory prohibition.
We are satisfied that the statute is narrowly directed at preventing only the physical interference with hunting by those who have the purpose to interfere. By defining interference as a form of physical impediment, coupled with the general and specific intent requirements that solely implicate conduct, the statute is not an overbroad regulation of First Amendment rights.[10]

III.
We turn next to the question of whether the statute is unconstitutionally vague. "To succeed [on a facial challenge of vagueness], ... the complainant must demonstrate that the law is impermissibly vague in all applications." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982); accord State v. Maldonado, 137 N.J. 536, 563, 645 A.2d 1165 (1994). Stated another way, a statute is facially vague if "there is no conduct that it proscribes with sufficient certainty." State v. Cameron, 100 N.J. 586, 593, 498 A.2d 1217 (1985).
Vagueness "is essentially a procedural due process concept grounded in notions of fair play." State v. Lashinsky, 81 N.J. 1, 17, 404 A.2d 1121 (1979). The Constitution requires the law to be sufficiently clear and precise so that the ordinary person has notice and an adequate warning of the prohibited conduct. State v. Lee, 96 N.J. 156, 165-66, 475 A.2d 31 (1984). This is especially important where the legislation implicates the First Amendment. Cameron, supra, 100 N.J. at 592, 498 A.2d 1217. In evaluating a vagueness claim, "we are adjured to follow an analytical approach by which the level of clarity required of the language of the *76 enactment depends on the nature of the activity that is sought to be regulated." Id. at 594, 498 A.2d 1217. "[G]reater imprecision can be tolerated in enactments with civil rather than criminal penalties because of differences in the likelihood, as well as in the consequences, of any misunderstanding." Id. at 592, 498 A.2d 1217 (citing Village of Hoffman Estates, supra, 455 U.S. at 498-99, 102 S.Ct. at 1193, 71 L.Ed.2d at 371-72). A person who violates the Hunter Harassment Statute is subject to prosecution for a petty disorderly persons offense. Accordingly, we hold the language of the statute to the standard of clarity required of criminal statutes.
Plaintiffs claim that although they are "all law-abiding citizens of this state, with high degrees of education, [they] were unable to ascertain the parameters of the State's [sic] prohibitions." Furthermore, they assert that attorneys "were unable to assure hunting opponents that their otherwise legal activities in a public forum would not risk criminal sanction under the statute." They specifically complain that N.J.S.A. 23:7A-2a is vague because the common meanings of "block," "obstruct," and "impede" do not illuminate the practical limit of the subsection, and "[c]onsequently, the statute potentially implicates a myriad of completely lawful activities that are protected under the First Amendment...." Plaintiffs further contend that N.J.S.A. 23:7A-2g is vague because its application turns on the subjective feelings of the hunter involved. Additionally, they argue that the words "any other" in subsection (g), its catchall provision, are "overly broad" and therefore vague. Lastly, they maintain that if any distraction can scare away wildlife, the statute presents no standard.
To begin, neither subsection (a) nor (g) is vague when evaluated in the context of the specific activity being regulated. As the trial court held, the terms "block," "obstruct," and "impede," in subsection (a) provide a "reasonable degree of certainty of the conduct that [is] proscribed." According to Merriam Webster's Collegiate Dictionary (10th ed.1996), "block" means "to make unsuitable for passage or progress by obstruction," id. at 123; "obstruct" means "to block or close up by an obstacle," id. at 803; and "impede" means "to interfere with or slow the progress of," id. at 581. Indeed, none of these words are so unusual or subtle to "send the average citizen scrambling for a dictionary," State v. Afanador, 134 N.J. 162, 171, 631 A.2d 946 (1993), let alone create "the sense that no standard of conduct is specified at all," Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217 (1971). Moreover, the Legislature has not given any indication it intended any special meaning for these terms beyond their common definitions. See Afanador, supra, 134 N.J. at 171, 631 A.2d 946. Hence, the terms are not facially vague.
Nor is the statute vague because its enforcement depends on the subjective feeling of the particular hunter involved; nor does it effectively grant the hunter the discretion, without any defining standard, the right to decide whether the conduct should be proscribed. See Coates, supra, 402 U.S. at 615-16, 91 S.Ct. at 1689, 29 L.Ed.2d at 217-18; see also Hill, supra, 482 U.S. at 465 n. 15, 107 S.Ct. at 2512 n. 15, 96 L.Ed.2d at 414 n. 15. To the contrary, the proscribed conduct is not based on the hunter's personal predilections, but on the actor's conduct and his or her specific intent. In other words, for a person to be found to have violated the statute, the State must prove that the person "block[ed], obstruct[ed] or imped[ed], or attempt[ed] to block, obstruct, or impede," the hunter with "the purpose of hindering or preventing the lawful taking of wildlife." N.J.S.A. 23:7A-2a (emphasis added). By imposing a specific-intent requirement on subsection (a), the Legislature sufficiently clarified the conduct proscribed. See Mortimer, supra 135 N.J. at 536, 641 A.2d 257.
Similarly, the language in subsection (g) is clarified by the requirement that the *77 State must demonstrate that the person "mak[ing] or attempt[ing] to make loud noises or gestures" do so "in order to disturb, alarm, drive, attract, or affect the behavior of wildlife or disturb, alarm, disrupt, or annoy a person lawfully taking wildlife." N.J.S.A. 23:7A-2g (emphasis added). To the extent there is ambiguity in the term "loud noises" or "gestures," here, too, the specific intent requirement serves to illuminate the potentially vague phrases. As for the purposive terms themselves, e.g., "alarm" or "annoy," these are sufficiently clear to inform a person of ordinary intelligence of the type of mental culpability needed. See State v. Hoffman, 149 N.J. 564, 579-81, 695 A.2d 236 (1997).
Lastly, the catchall phrase, "any other similar action or activity," contained in subsection (g), is not impermissibly vague because we avoid a constitutional challenge by applying the ejusdem generis principle of statutory construction. We assume that the Legislature did not intend to expose a person to liability under subsection (g) for engaging in conduct unless the conduct was similar to that which is proscribed in the statute. See id. at 584, 695 A.2d 236."[11] In so construing the language of the catch-all provision, we perceive no constitutional infirmity here. In short, we are satisfied that the Hunter Harassment Statute is not unconstitutionally vague on its face.

IV.
To the extent plaintiffs have raised additional constitutional arguments based on equal protection and free exercise of religion grounds, or otherwise, for the reasons already discussed, we reject them as entirely without merit, R. 2:11-3(e)(1)(E), adding only these brief comments. We reject the equal protection argument that the statute impermissibly endorses the viewpoint of hunters at the expense of protesters for the reasons previously stated. On its face, the Hunter Harassment Statute regulates only conduct. As for plaintiff Binkowski's free exercise of religion claim, she failed to support that claim by competent evidential material describing her purported religious beliefs. See R. 4:46-2; see also R. 1:6-6.
Affirmed.
NOTES
[1] We refer to N.J.S.A. 23:7A-1 to -3 as the "Hunter Harassment Statute" based upon the Assembly Judiciary Law and Public Safety Committee's statement which accompanied the legislation. It says: "This bill would prohibit the harassment of hunters...."
[2] Plaintiffs are Gloria Binkowski, the chief veterinarian of the Associated Humane Societies' Animal Shelter in Newark; Henry Furst, an attorney who claims he "has devoted many hours of time on a pro bono basis to advising and representing persons who are interested in the legal protection of animals in New Jersey"; and Robert Kelman, a resident of Hudson County who "volunteer[s] his time to assist animal welfare efforts."
[3] The complaint was not supported by certifications.
[4] See e.g., R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (involving successful challenge to juvenile adjudication of violating ordinance banning burning of crosses); Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (involving successful challenge to defendant's conviction of burning the American flag in violation of statute prohibiting desecration of a venerated object); Clark v. Community for Creative Non-Violence, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (involving unsuccessful challenge of United States Park Service's denying permission to erect tents in park to protest the plight of homelessness); Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (involving successful challenge by adult bookstore found guilty of violating municipal zoning ordinance that prohibited live nude dancing); Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (involving successful challenge to school regulation prohibiting black armbands as expressive of anti-war sentiment); United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (involving unsuccessful challenge by defendant convicted of burning his selective service registration certificate publicly to influence others to adopt his anti-war beliefs).
[5] Unlike plaintiffs' motion, the State's motion for summary judgment was supported by the certifications of various government officials responsible for management of the State's wildlife.
[6] Broadrick held that when a statute is challenged as facially overbroad under the First Amendment, "the overbreadth ... must not only be real, but substantial as well." 413 U.S. at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842.
[7] See, for example, the cases cited in note 3, supra. Each involves the application of a statute to a discrete set of facts.
[8] At no time have plaintiffs argued that the regulation of hunting and fishing is beyond the police powers of the State to regulate, nor could they. See Baldwin v. Fish & Game Comm'n, 436 U.S. 371, 391, 98 S.Ct. 1852, 1864, 56 L.Ed.2d 354, 370 (1978) ("[P]rotection of the wild life of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection." (quoting Lacoste v. Department of Conservation, 263 U.S. 545, 552, 44 S.Ct. 186, 189, 68 L.Ed. 437, 441 (1924))).
[9] N.J.S.A. 23:7A-2 proscribes certain conduct "for the purpose of hindering or preventing the lawful taking of wildlife." The statute defines "taking" in part as "to hunt ... or to attempt to hunt ... wildlife." N.J.S.A. 23:7A-1.
[10] Though challenged below, we do not consider the potential overbreadth of subsection (f) because plaintiffs do not raise the issue on appeal.
[11] [W]hen general words follow specific words in a statutory enumeration, the general words are construed to embrace only the objects similar in nature to those objects enumerated by the preceding specific words. This technique saves the legislature from spelling out in advance every contingency in which the statute could apply.

[Hoffman, supra, 149 N.J. at 584, 695 A.2d 236 (quoting Hovbilt, Inc. v. Township of Howell, 263 N.J.Super. 567, 571, 623 A.2d 770 (App.Div. 1993) (citations omitted in original), aff'd, 138 N.J. 598, 651 A.2d 77 (1994)).]