999 A.2d 535 (2010)
414 N.J. Super. 530
NEW JERSEY ASSOCIATION OF SCHOOL ADMINISTRATORS, Dr. Terry Van Zoeren, Dr. Simon Bosco, Joseph Abate, Jr. and John Golden, Plaintiffs-Appellants,
v.
Bret SCHUNDLER, Commissioner of Education of the State of New Jersey, and Paula T. Dow, Attorney General of the State of New Jersey,[1] Defendants-Respondents.
DOCKET NO. A-2101-08T2.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 2010.
Decided August 3, 2010.
*541 Douglas K. Wolfson (Greenbaum, Rowe, Smith & Davis), Woodbridge, argued the cause for appellants (Schwartz Simon Edelstein Celso & Kessler, attorneys; Stephen J. Edelstein, Morristown, of counsel and on the brief; Marc H. Zitomer, Florham Park, and Brett L. Carrick, on the brief).
Shannon M. Ryan, Deputy Attorney General, argued the cause for respondents (Paula T. Dow, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Michelle Lyn Miller, Senior Deputy Attorney General, on the brief).
Before Judges WEFING, GRALL and MESSANO.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiffs New Jersey Association of School Administrators ("Association"), Dr. Terry Van Zoeren, Dr. Simon Bosco, Joseph *542 Abate, Jr. and John Golden challenge certain regulations adopted by defendant Commissioner of Education. Plaintiff Association is the professional association for individuals employed as school superintendents and assistant school superintendents in New Jersey. Individual plaintiffs Dr. Terry Van Zoeren, Dr. Simon Bosco and Joseph Abate, Jr. are all employed as school superintendents; plaintiff John Golden is employed as an assistant school superintendent. For the balance of this opinion we shall simply refer collectively to plaintiffs.

I
The regulations in question, entitled "Fiscal Accountability, Efficiency and Budgeting Procedures," were promulgated in 2008 and are codified at N.J.A.C. 6A:23A-1.2 to -22.15. They were adopted in response to statutory enactments intended to provide a new funding formula for state aid for schools, to promote greater efficiency and stronger budgetary controls and, as a result, slow the steady increase in real property taxes in New Jersey. The initial statement in the regulations sets forth their underlying purpose.
The purpose of these rules is to assure the financial accountability of boards of education through enhanced State monitoring, oversight and authority, and to ensure that each district board of education adopts an annual budget that provides adequate resources to meet the State Constitution's mandate for a thorough and efficient system of free public schools for all children.
[N.J.A.C. 6A:23A-1.1.]
The history behind the promulgation of these regulations is set forth comprehensively in New Jersey Ass'n of School Business Officials v. Davy, 409 N.J.Super. 467, 472-80, 978 A.2d 295 (App.Div.2009). In that matter, school business administrators challenged these same regulations, making some of the same arguments presented here. There is no need for us to restate that history here; rather, we incorporate it into this opinion. That history, however, informs our analysis of the issues before us; and we shall, when appropriate, refer to that history in considering plaintiffs' arguments and defendants' responses.
One of the statutory changes enacted that led to these regulations was the creation of the position of executive county superintendent of schools, charged with the responsibility "to monitor and promote administrative and operational efficiencies and cost savings within the school districts located in the county, while enhancing the effectiveness of the districts in providing a thorough and efficient system of education,. . ." N.J.S.A. 18A:7-1(b). The executive county superintendent is also charged with the duty to monitor those school districts in terms of their "instruction and program; personnel; fiscal management; operations; and governance." Ibid.
Plaintiffs in this action challenge nine discrete regulations granting the executive county superintendent extensive powers with respect to reviewing the employment contracts of school superintendents and assistant superintendents. The particular regulations are contained in subsections (1), (3), (4), (5), (6), (7), (8), (9) and (11) of N.J.A.C. 6A:23A-3.1(e). They set forth the particular standards the executive county superintendent must consider in determining whether to approve a proposed contract. They provide as follows:
(e) The contract review and approval shall be consistent with the following additional standards:
1. Contracts for each class of administrative position shall be comparable with the salary, benefits and other emoluments contained in the contracts *543 of similarly credentialed and experienced administrators in other districts in the region with similar enrollment, academic achievement levels and challenges, and grade span.
. . . .
3. No contract shall include provisions for the reimbursement or payment of employee contributions that are either required by law or by a contract in effect in the district with other teaching staff members, such as payment of the employee's State or Federal taxes, or of the employee's contributions to FICA, Medicare, State pensions and annuities (TPAF), life insurance, disability insurance (if offered), and health benefit costs.
4. No contract shall contain a payment as a condition of separation from service that is deemed by the Executive County Superintendent to be prohibited or excessive in nature. The payment cannot exceed the lesser of the calculation of three months pay for every year remaining on the contract with proration for partial years, not to exceed 12 months, or the remaining salary amount due under the contract.
5. No contract shall include benefits that supplement or duplicate benefits that are otherwise available to the employee by operation of law, an existing group plan, or other means; for example, an annuity or life insurance plan that supplements or duplicates a plan already made available to the employee. Notwithstanding the provisions of this section, a contract may contain an annuity where those benefits are already contained in the existing contract between that employee and the district.
6. Contractual provisions regarding accumulation of sick leave and supplemental compensation for accumulated sick leave shall be consistent with N.J.S.A. 18A:30-3.5. Supplemental payment for accumulated sick leave shall be payable only at the time of retirement and shall not be paid to the individual's estate or beneficiaries in the event of the individual's death prior to retirement. Pursuant to N.J.S.A. 18A:30-3.2, a new board of education contract may include credit of unused sick leave days in accordance with the new board of education's policy on sick leave credit for all employees.
7. Contractual provisions regarding accumulation of unused vacation leave and supplemental compensation for accumulated unused vacation leave shall be consistent with N.J.S.A. 18A:30-9. Contractual provisions for payments of accumulated vacation leave prior to separation can be included but only for leave accumulated prior to June 8, 2007 and remaining unused at the time of payment. Supplemental payments for unused vacation leave accrued consistent with the provisions of N.J.S.A. 18A:30-9 after June 8, 2007 as well as unused vacation leave accumulated prior to June 8, 2007 that has not been paid, shall be payable at the time of separation and may be paid to the individual's estate or beneficiaries in the event of the individual's death prior to separation.
8. Contractual provisions that include a calculation of per diem for 12-month employees shall be based on a 260-day work year.
9. No provision for a bonus shall be made except where payment is contingent upon achievement of measurable specific performance objectives expressly contained in a contract approved pursuant to this section, where compensation is deemed reasonable relative to the established performance objectives and achievement of the performance objectives *544 has been documented to the satisfaction of the district board of education.
. . . .
11. No contract shall include a provision for a monthly allowance except for a reasonable car allowance. A reasonable car allowance cannot exceed the monthly cost of the average monthly miles traveled for business purposes multiplied by the allowable mileage reimbursement pursuant to applicable law and regulation and New Jersey Office of Management and Budget (NJOMB) circulars. If such allowance is included, the employee cannot be reimbursed for business travel mileage nor assigned permanently a car for official district business. Any provision of a car for official district business must conform with N.J.A.C. 6A:23A-6.12 and be supported by detailed justification. No contract can include a provision of a dedicated driver or chauffeur.
[N.J.A.C. 6A:23A-3.1.]
In addition, plaintiffs challenge certain provisions of N.J.A.C. 6A:23A-5.2(a), which calls for each district to establish a policy that "shall include, to the extent practical and cost effective" the following provisions:
2. Establishment of procedures to ensure the prudent use of legal services by employees and board of education members and the tracking of the use of those services that should include:
. . . .
iv. A provision to maintain a log of all legal counsel contact including name of legal counsel contacted, date of contact, issue discussed and length of contact. Legal bills shall be compared to the contact log and any variances shall be investigated and resolved;
4. Professional services contracts are issued in a deliberative and efficient manner such as through a request for proposals based on cost and other specified factors or other comparable process that ensures the district receives the highest quality services at a fair and competitive price or through a shared service arrangement[.][2]
Plaintiffs contend that all of these regulations are invalid for a variety of reasons, including that they violate both the United States Constitution and New Jersey Constitution since they represent an impermissible taking, are unconstitutionally vague and violate the equal protection clause of the Fourteenth Amendment; contravene existing statutory provisions; and are ultra vires and void because the Commissioner lacked the authority to promulgate them.

II
We note first the standard which governs our consideration of these issues. Agency regulations "are accorded a presumption of validity." N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999). Our courts give "great deference" to administrative agencies when they adopt rules implementing their enabling statutes. N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385, 955 A.2d 886 (2008). However, the "presumption of validity does not attach if the regulation on its face reveals that the agency exceeded the power delegated to it by the Legislature." In re N.J. Individual Health Coverage Program's *545 Readoption of N.J.A.C. 11:20-1 et seq., 179 N.J. 570, 579, 847 A.2d 552 (2004).
"[A] regulation can only be set aside if it is proved to be arbitrary or capricious, plainly transgresses the statute it purports to effectuate, or alters the terms of the statute and frustrates the policy embodied in it." In re Adopted Amendments to N.J.A.C. 7:7A-2.4, 365 N.J.Super. 255, 265, 839 A.2d 60 (App.Div. 2003). The party challenging the rulemaking has the burden of demonstrating that the rulemaking was arbitrary, unreasonable, or capricious. In re N.J. Individual Health, supra, 179 N.J. at 579, 847 A.2d 552; In re Adoption of Amendments to N.J.A.C. 6:28-2.10, 3.6 & 4.3, 305 N.J.Super. 389, 401-02, 702 A.2d 838 (App.Div. 1997).
We first take up plaintiffs' contention that these regulations impermissibly reduce the compensation for school administrators and are thus contrary to the federal and state constitutional prohibitions against depriving a person of property without due process of law. U.S. Const. amend. XIV, § 1; N.J. Const. art I, ¶ 1. See Klumpp v. Borough of Avalon, 202 N.J. 390, 997 A.2d 967 (2010). State law determines whether there is a protected property interest. Twp. of Montville v. Block 69, Lot 10, 74 N.J. 1, 7, 376 A.2d 909 (1977). Plaintiffs must demonstrate an entitlement to a property interest created by state statute or regulation in order to have a benefit be recognized as property and subject to constitutional protections. Carter v. City of Philadelphia, 989 F.2d 117, 120 (3d Cir.1993).
In our judgment, it is important to note in analyzing these arguments that the plaintiffs do not all stand on an equal footing; while assistant superintendents receive the protections of tenure after satisfactory completion of the requisite period of service, N.J.S.A. 18A:28-5, superintendents are not tenured employees. Rather, they serve under employment contracts, which cannot be for a period less than three years nor more than five years. N.J.S.A. 18A:17-15.
The protections afforded to tenured assistant superintendents are thus significantly broader than those afforded to superintendents. N.J.S.A. 18A:17-20.2 provides that a superintendent shall not suffer a reduction in compensation "[d]uring the term of any employment contract." Assistant superintendents however, once they have attained tenure, may not be reduced in compensation. N.J.S.A. 18A:28-5.
With respect to superintendents, we understand the position of the Commissioner to be a recognition of the existing contractual rights of superintendents; there is no contention that existing contracts must be modified to conform to the provisions of these regulations. We consider it clear that the superintendents do not have a property interest in the terms and conditions of any contracts they may execute in the future. Whatever interests they may have are entirely contingent and can rise no higher than a mere expectancy and thus cannot be cloaked with constitutional protection. Valdes v. N.J. State Bd. of Med. Exam'rs, 205 N.J.Super. 398, 405, 501 A.2d 166 (App.Div.1985) (holding that due process does not attach when "an individual has a mere expectation in a property interest.")
A similar analysis and conclusion applies to assistant superintendents without tenure. Any interest they may have in the terms of their future employment is a contingent one.
A different situation, however, exists with respect to assistant superintendents who have tenure. Upon receipt of tenure, *546 assistant superintendents may not be "dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause. . . ." N.J.S.A. 18A:28-5. Plaintiffs contend that any attempt to modify the employment relationship between tenured assistant superintendents and their employing districts to conform to these regulations violates their rights under the tenure statute.
Each of the challenged regulations has separate consequences, and thus each must be analyzed separately with respect to plaintiffs' contention that they effect a taking of a protected property interest.

A
The first regulation challenged before us, N.J.A.C. 6A:23A-3.1(e)(3), precludes a school district from including in an administrator's contract provisions that would require the district to reimburse the individual for payments either required by law or by the district's contracts with other employees. Examples include contractual provisions obligating the district to reimburse the administrator for his or her share of required FICA or pension payments, or for disability insurance, if teachers in that district must pay for their own disability coverage. Because a superintendent does not have a vested right to have any particular contractual terms carried forward into future contracts, N.J.A.C. 6A:23A-3.1(e)(3) does not effect a taking of any property rights of superintendents. We reject this aspect of plaintiffs' challenge.
We turn then to assistant superintendents. Assistant superintendents who have not achieved tenure are in the same position as superintendents at the expiration of their contract term; that is, they have no vested rights in any particular level of compensation or benefits and N.J.A.C. 6A:23A-3.1(e)(3) deprives them of nothing. We reach a different result, however, with respect to assistant superintendents who have received tenure. The overall level of their compensation is protected by their respective tenure statutes.
We consider it instructive that the tenure statute does not speak of a reduction in salary but, rather, a reduction in compensation, a term we deem to be of considerably broader import than salary. An employee's compensation includes not just the amount printed on the salary check; it encompasses as well the overall package of benefits that accompany that employment compensation and "includes wages, stock option plans, profit-sharing, commissions, bonuses, golden parachutes, vacation, sick pay, medical benefits, disability, leaves of absence, and expense reimbursement." Black's Law Dictionary 277 (7th ed. 1999) (quoting Kurt H. Decker & H. Thomas Felix II, Drafting and Revising Employment Contracts § 3.17 at 68 (1991)). See also Owens v. Press Publ'g Co., 20 N.J. 537, 545, 120 A.2d 442 (1956) (recognizing that compensation includes severance pay); Botany Mills, Inc. v. Textile Workers Union of Am., 50 N.J.Super. 18, 30, 141 A.2d 107 (App.Div.) (recognizing that vacation pay and severance pay are in the nature of deferred compensation), certif. granted, 27 N.J. 320, 142 A.2d 710 (1958), certif. dismissed, Apr. 27, 1959. N.J.S.A. 18A:17-20.2a, moreover, provides a comprehensive definition of the term compensation and directs that it "includes, but is not limited to, salary, allowances, bonuses and stipends, payments for accumulated sick or vacation leave, contributions toward the costs of health, dental, life and other types of insurance, medical reimbursement plans, retirement plans, and any in-kind or other form of remuneration." We recognize that the statute speaks only of superintendents; we cite to *547 it for its legislative recognition that compensation takes many forms beyond mere wages.
A tenured assistant superintendent whose agreement with the school district calls for the district to reimburse the individual for FICA payments or disability insurance premiums will undoubtedly experience an overall diminution in compensation if this regulation were to be applied to that person. The remedy, in our view, lies not in pointing to the fiscal soundness of the policy behind the regulation but in amending the tenure statute to permit the entirely laudable goals of the regulation to be achieved without running afoul of the statutory limitation.

B
The second regulation, N.J.A.C. 6A:23A-3.1(e)(4), places a limitation on the amount of separation pay an administrator may receive from the district in the event of departure prior to the completion of the contract term. Such a payment may not exceed the remaining salary due under the contract, or three months pay for each year remaining on the contract, whichever is the lesser. With respect to superintendents and untenured assistant superintendents, we apply the same analysis to this provision as we did to 3.1(e)(3): superintendents have no vested right in the continuation of any particular contractual terms into future contracts, and thus the regulation is not a taking of any property rights, and untenured assistant superintendents have no vested right to any particular level of benefit or compensation.
The record before us does not make clear the extent to which, if any, assistant superintendents with tenure work under an employment contract. Clearly, a tenured assistant superintendent who does not have an employment contract is not affected by this regulation. There was reference at oral argument to some assistant superintendents working under one-year contracts. The regulation as adopted has no adverse effect in such an instance. We decline to address the regulation in further detail with respect to tenured assistant superintendents in light of this factual vacuum.

C
The next regulation at issue is N.J.A.C. 6A:23A-3.1(e)(5), which prohibits a district from providing supplemental benefits to a superintendent or assistant superintendent that duplicate benefits available through an existing group plan. We apply the same analysis to this regulation with respect to superintendents and untenured assistant superintendents as we did to N.J.A.C. 6A:23A-3.1(e)(3) and (4). They have no vested right in the continuation of such benefits.
We can perceive no analytical justification, however, for drawing a distinction with respect to its impact upon assistant superintendents who have achieved tenure and the impact of N.J.A.C. 6A:23A-3.1(e)(3); both effect a reduction in the overall compensation of a tenured assistant superintendent, contrary to N.J.S.A. 18A:28-5.

D
In our judgment, the next challenged regulation, N.J.A.C. 6A:23A-3.1(e)(6), is not comparable to the preceding regulations. This regulation was adopted following passage of N.J.S.A. 18A:30-3.5, which provides that a school district "shall not pay supplemental compensation . . . for accumulated unused sick leave in an amount in excess of $15,000. . . ." The regulation restates this limitation, includes the statute's further direction that payment *548 for accumulated unused sick leave may only be made at the time of retirement and adds the further provision that payment may not be made to the employee's estate or beneficiaries in the event the employee dies prior to retirement.
To the plaintiffs' argument that the regulation constitutes a taking of a property interest, the State responds only that superintendents do not have a property interest in maintaining into the future existing contractual terms. That, however, overlooks the fact that the regulation purports to bar a district from paying a superintendent the value of accumulated unused sick leave that exceeded $15,000 that existed at the time the regulation was promulgated. We agree that the regulation can validly prohibit an agreement that would permit the future accumulation of unused sick leave in an amount in excess of $15,000. The State has not presented any authority, however, to support the view that a superintendent can be deprived of existing accumulated unused sick leave in excess of $15,000 other than the history of some abuses of that benefit recited in Davy, supra, 409 N.J.Super. at 474, 978 A.2d 295. Nor has it provided any authority to support the language which forfeits this sum in the event the individual dies prior to the official date of retirement.
The record before us does not disclose the breakdown between superintendents who have accumulated unused sick leave having a value in excess of $15,000 and those superintendents who have not. As to the latter, the cap upon such a benefit is an entirely permissible effort to limit and restructure spending by a school district. As to the former, however, we agree with plaintiffs that those superintendents cannot be deprived of the benefit they had accrued prior to the enactment of N.J.A.C. 6A:23A-3.1(e)(6).
This latter conclusion applies equally to assistant superintendents without regard to their tenure status. To the extent they have accrued accumulated unused sick leave, they cannot be deprived of that benefit. With respect to those assistant superintendents who have achieved tenure, we consider the limitation on accumulation of unused sick leave in the future to be distinguishable from the attempt to restrict payment for items such as FICA taxes or disability premiums. That regulation would result in a direct reduction in an employee's compensation; this regulation merely limits the ability to accrue a benefit in the future.
Our colleague suggests that our discussion of this issue is unnecessary in light of the passage of N.J.S.A. 18A:30-3.6. In our view, this statute, effective May 21, 2010, only partially moots the issue. We retain this portion of the opinion in light of the possibility that a superintendent or assistant superintendent with accumulated sick leave in excess of $15,000 may have died in the period between the adoption of N.J.A.C. 6A:23A-3.1(e)(6) and the effective date of May 21, 2010. The record before us does not indicate whether that eventuality may have occurred.

E
Certain contractual benefits payable to a superintendent are calculated on a per diem basis. Prior to the adoption of these regulations, such benefits were calculated on the basis of a school year of 240 days. N.J.A.C. 6A:23A-3.1(e)(8) specifies, however, that such calculations must be based upon a 260-day work year. The inevitable result of this change is to lower the amount due.
The regulation, however, is prospective only; it would reach only future contracts or those individuals whose current contract does not specify a method for *549 per diem calculation. It does not divest an administrator of any express contractual entitlement, and thus there is no constitutional violation.
A similar challenge was mounted in Davy, supra, and we rejected it, saying:
Quite obviously, the standard is rationally based on a five-day work week for fifty-two weeks. As applied to twelve-month employees, this standard is neither arbitrary nor unreasonable or of the type that requires specific statutory support. Indeed, it is difficult to posit a different measure of per-diem rate for twelve-month employees.
[Davy, supra, 409 N.J.Super. at 491, 978 A.2d 295.]

F
Plaintiffs also challenge N.J.A.C. 6A:23A-3.1(e)(9), which sets specific guidelines for contractual provisions for the payment of bonuses. Bonuses must not only be reasonable, they must also be tied to the "achievement of measurable specific performance objectives. . . ." As with 3.1(e)(3), (4), (5) and (8), the regulation does not purport to interfere with existing contract terms for bonuses, and it is thus valid.

G
The final regulation at issue in this section of plaintiffs' argument is N.J.A.C. 6A:23A-3.1(e)(11), which reduces the amount that an individual may be reimbursed for mileage from the prior $0.485 per mile to $0.31 per mile. To the extent an individual has a contract with a district which sets the rate of reimbursement, the regulation cannot overturn that contractual agreement. We are aware of no principle which would hold that an employee has a vested right to retain a specified level of mileage reimbursement into the future for miles not yet driven. We can perceive no constitutional infirmity with the regulation.

III
Plaintiffs also assert that certain of these regulations are unconstitutionally vague. We disagree.
"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972). "[T]he constitutional ban on vague laws is intended to invalidate regulatory enactments that fail to provide adequate notice of their scope and sufficient guidance for their application." State v. Cameron, 100 N.J. 586, 591, 498 A.2d 1217 (1985) (citing Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972)). The ban on vague laws "is essentially a due process concept grounded in notions of fair play." State v. Lashinsky, 81 N.J. 1, 17, 404 A.2d 1121 (1979). The law must be "sufficiently clear and precise so that the ordinary person has notice and an adequate warning of the prohibited conduct." Binkowski v. State, 322 N.J.Super. 359, 380-81, 731 A.2d 64 (App.Div.1999) (citing State v. Lee, 96 N.J. 156, 165-66, 475 A.2d 31 (1984)). To succeed on a facial challenge of vagueness, such as plaintiffs present here, "`the complainant must demonstrate that the law is impermissibly vague in all applications.'" Binkowski, supra, 322 N.J.Super. at 381, 731 A.2d 64 (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982)).
It is fundamental that administrative regulations must . . . be sufficiently definite to inform those subject to them as to what is required. At the same time, regulations must be flexible enough to *550 accommodate the day-to-day changes in the area regulated.
[N.J. Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 82, 415 A.2d 1147, appeal dismissed and cert. denied, 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980).]
In this portion of their argument, plaintiffs focus on three regulations, the first of which is N.J.A.C. 6A:23A-3.1(e)(1), which states:
Contracts for each class of administrative position shall be comparable with the salary, benefits and other emoluments contained in the contracts of similarly credentialed and experienced administrators in other districts in the region with similar enrollment, academic achievement levels and challenges, and grade span.
Plaintiffs assert that this regulation cannot pass constitutional muster because the terms "comparable" and "region" are not defined, and thus the regulation is facially vague. We fail to see how the term "comparable" is anything other than a common-sense term, requiring no regulatory definition. See A.M.S. ex rel. A.D.S. v. Bd. of Educ. of Margate, 409 N.J.Super. 149, 976 A.2d 402 (App.Div.2009).
Nor do we consider the term "region" facially vague. The regulation speaks to the obligation of the executive county superintendent to review administrative contracts. The region can only encompass the county within which the executive county superintendent has authority to act. The regulation recognizes, moreover, that not all areas within a particular county have the same demographics, resources, and challenges. It appropriately authorizes the executive county superintendent to recognize those distinctions when reviewing administrative contracts.
That the term "region" refers to "county" is further buttressed by the initial paragraph of N.J.A.C. 6A:23A-3.1, paragraph (a), which confers upon the executive county superintendent the authority to
review and approve [employment contracts and amended and extended employment contracts], for all superintendents, deputy superintendents, assistant superintendents and school business administrators in school districts, county vocational school districts, county special services school districts and other districts, except charters, within the county under the supervision of the Executive County Superintendent[.] (Emphasis added.)
Plaintiffs also challenge on vagueness grounds N.J.A.C. 6A:23A-3.1(e)(9), which provides in pertinent part that contractual provisions for bonus payments must be "reasonable relative to the established performance objectives. . . ." Plaintiffs complain there is no definition of "reasonable." We have, however, recognized that the term "reasonably" is not unconstitutionally vague as it is "`measured by common understanding [and] fairly and adequately convey[s] [its] meaning to all concerned.'" Sheeran v. Progressive Life Ins. Co., 182 N.J.Super. 237, 248, 440 A.2d 469 (App.Div.1981) (quoting Laba v. Newark Bd. of Educ., 23 N.J. 364, 384, 129 A.2d 273 (1957)).
The final regulation challenged on grounds of vagueness is N.J.A.C. 6A:23A-3.1(e)(4), which provides in pertinent part that a contract cannot contain a provision for "payment as a condition of separation from service that is deemed by the Executive County Superintendent to be . . . excessive in nature." Plaintiffs complain that the regulation does not define the term excessive. Their argument, however, overlooks the balance of the regulation, which we set forth earlier, which contains *551 a specific measure by which to judge a separation payment.

IV
Plaintiffs raise an additional constitutional argument; they assert the regulations violate the equal protection clause of the Fourteenth Amendment to the United States Constitution. Here, plaintiffs point to N.J.A.C. 6A:23A-3.1(e)(1), which, as we noted earlier, requires administrative contracts to be comparable to other administrative contracts in the region. Plaintiffs argue that this regulation differentiates between administrators and members of a collective bargaining unit, such as teachers, and thus creates an impermissible classification. We disagree.
The equal protection clause, and its New Jersey counterpart, N.J. Const. art. I, ¶ 1, do not prohibit all classifications. If the classification does not involve a fundamental right or a suspect class, it must only be rationally related to a legitimate state interest. Greenberg v. Kimmelman, 99 N.J. 552, 564, 494 A.2d 294 (1985). In that context, a classification carries with it a strong presumption of validity. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314, 113 S.Ct. 2096, 2101-02, 124 L.Ed.2d 211, 222 (1993).
High level administrators, such as plaintiffs, are not similarly situated to members of a collective bargaining unit such as teachers. The regulation, moreover, is rationally related to a legitimate state interest, reducing the level at which school spending has increased. Finally, to the extent plaintiffs challenge this regulation on the basis that it limits the ability of school districts in poorer regions to attract administrators from wealthier regions, plaintiffs do not have standing to raise that contention. We perceive no violation of the equal protection clause.

V
Plaintiffs also argue that the regulations are invalid as contravening certain existing New Jersey statutes. The first statute to which they point is the Tenure Employees Hearing Law, N.J.S.A. 18A:6-10 to -18.1. We have already addressed earlier in this opinion our analysis of the challenge to a reduction in compensation for tenured employees. We shall not restate it here.
In addition, plaintiffs contend that these regulations conflict with N.J.S.A. 18A:30-3.5, which imposes limits on the payment by a board of education to an officer or employee for accumulated unused sick leave, and N.J.S.A. 18A:30-9, which imposes limits on the payment by a board of education to an officer or employee for accrued vacation leave. Each statute concludes with a definition of officer or employee which specifically excludes "a person who is employed or appointed in the regular or normal course of employment or appointment procedures and consented to or approved in a general or routine manner appropriate for and followed by the political subdivision, or the agency or instrumentality thereof." Plaintiffs argue that superintendents and assistant superintendents are appointed in the regular course of business and approved by vote of the particular board of education and thus do not fit within the scope of the statute, which is restricted to officers and employees. Plaintiffs contend that in light of this statutory exclusion, the Commissioner lacked the authority to include superintendents and assistant superintendents within the regulatory scope.
A similar argument was put forth on behalf of school business administrators in Davy, supra, 409 N.J.Super. 467, 978 A.2d 295, and we rejected it. Judge Grall closely examined the relevant statutory *552 provisions. In addition to noting that the construction offered by the business administrators would result in a statute having no practical effect, id. at 483, 978 A.2d 295, she also pointed out that the statutory provisions governing the appointment of business administrators indicate that such appointments "are not fairly to be deemed to be among those made `in a general or routine manner. . . .'" Id. at 489, 978 A.2d 295. Similar language appears in the statute controlling the appointment of a superintendent, N.J.S.A. 18A:17-15, warranting the same conclusion: it is not an appointment made in a general or routine manner.
We acknowledge that the statute governing the appointment of assistant superintendents, N.J.S.A. 18A:17-16, does not contain those same limitations. We are unable to conclude, however, that assistant superintendents are excluded from the statute's scope. A regulation will be set aside if it "`alters the terms of the statute and frustrates the policy embodied in it.'" In re Agricultural, Aquacultural & Horticultural Water Usage Certification Rules, N.J.A.C. 7:20A-1.1 et seq., 410 N.J.Super. 209, 223, 981 A.2d 99 (App.Div. 2009) (quoting Adopted Amendments to N.J.A.C. 7:7A-2.4, supra, 365 N.J.Super. at 265, 839 A.2d 60). Here, to exclude assistant superintendents would frustrate the legislative purpose while including them furthers that purpose.
Plaintiffs' argument that an earlier observation in the course of proceedings in federal court on the question of whether superintendents and assistant superintendents are officers or employees constitutes the law of the case rests upon a fundamentally erroneous perception of the scope of that principle. In re Estate of Stockdale, 196 N.J. 275, 311, 953 A.2d 454 (2008); Toto v. Princeton Twp., 404 N.J.Super. 604, 617-18, 962 A.2d 1150 (App.Div.2009). Their arguments on this line lack merit. R. 2:11-3(e)(1)(E).
The final aspect of plaintiffs' argument that portions of these regulations are invalid because they conflict with statutory provisions addresses N.J.A.C. 6A:23A-5.2(a)(2)(iv) and N.J.A.C. 6A:23A-5.2(a)(4), which deal with contact with legal counsel and selection of legal counsel. These particular regulations affect school districts, not these plaintiffs, and they thus lack standing to raise the question.

VI
Plaintiffs' final argument is that the regulations are ultra vires and void because, they assert, the Commissioner lacked the authority to issue them. We disagree.
The Commissioner of Education has primary jurisdiction to hear and determine all controversies under the school laws. Bower v. Bd. of Educ. of City of E. Orange, 149 N.J. 416, 420, 694 A.2d 543 (1997); see N.J.S.A. 18A:6-9. The Legislature specifically authorized the Commissioner, through the office of executive county superintendent, to review contracts under the school laws. N.J.S.A. 18A:7-8(j). The regulations at issue were promulgated in response to that statutory authorization. Finally, we deem plaintiffs' remaining contention, that the regulations in some manner violate what they refer to as New Jersey's tradition of "home rule" and are thus invalid, to lack any merit. R. 2:11-3(e)(1)(E).
In sum, we uphold the authority of the Commissioner in adopting these regulations. We find, however, that N.J.A.C. 6A:23A-3.1(e)(3), (4), (5), (6) improperly serve to deprive certain administrators of vested rights and to reduce the compensation of tenured assistant superintendents.
*553 GRALL, J.A.D., concurring and dissenting.
For the most part, I concur in the majority's determinations for the reasons stated by Judge Wefing. Nonetheless with respect for the well-stated conclusions, I part company on two points. First, because I disagree with the majority's view of the significance of N.J.S.A. 18A:28-5 and N.J.S.A. 18A:17-15, I dissent from the portions of the majority opinion invalidating regulations that may reduce the compensation of assistant superintendents who have tenure. Second, in adopting Chapter 3 of the Laws of 2010, the Legislature, in my opinion, superseded any restrictions on payments for unused sick leave accumulated prior to the effective date of the statute that may be incorporated in N.J.A.C. 6A:23A-3.1(e)(6). Accordingly, I would refrain from discussing the issues addressed in Part II, section D of the majority opinion on the ground that they are moot.
In New Jersey Ass'n of Sch. Bus. Officials v. Davy, 409 N.J.Super. 467, 471, 978 A.2d 295 (App.Div.2009), a panel of this court, of which I was a member, addressed several challenges to regulations entitled "Fiscal Accountability, Efficiency and Budgeting Procedures," N.J.A.C. Title 6A, Chapter 23A. Among the challenges addressed was a claim that the Commissioner "exceeded the authority delegated by the Legislature" and promulgated regulations that are "inconsistent with the enabling acts and in conflict with other statutes addressing compensation. . . ." 409 N.J.Super. at 471, 978 A.2d 295. The Association relied, in part, on a claim of inconsistency between the regulation and the statutory prohibition against reduction in the compensation of tenured employees set forth in N.J.S.A. 18A:28-5 and N.J.S.A. 18A:6-10. Id. at 490-91, 978 A.2d 295. We rejected the claim.
Briefly stated, in Davy we looked to the Supreme Court's decision in Spina v. Consol. Police and Firemen's Pension Fund Comm'n, 41 N.J. 391, 400, 197 A.2d 169 (1964). Davy, supra, 409 N.J.Super. at 490, 978 A.2d 295. In Spina the Court explained, "the general approach in our State [is] that the terms and conditions of public service in office or employment rest in legislative policy rather than contractual obligation, and hence may be changed except of course insofar as the State Constitution specifically provides otherwise." 41 N.J. at 400, 197 A.2d 169.
Adhering to the reasoning in Spina, we considered the import of the statutes directing the Commissioner to promulgate and enforce standards for review and approval of contracts for superintendents, assistant superintendents and business administrators. See Davy, supra, 409 N.J.Super. at 475-80, 978 A.2d 295 (discussing the statutes and the obligations imposed on the Commissioner by the Legislature through these enactments). And, we determined that the Commissioner's regulations affecting compensation were within the authority granted to the Commissioner in the enabling acts, see L. 2007, c. 53, 63, 92 and 260. The majority in this case reaches the same conclusion. Ante at 559, 999 A.2d at 552.
We also addressed the apparent conflict between the statutes authorizing the Commissioner's action and statutes providing protection from reduction in compensation for tenured employees. Davy, supra, 409 N.J.Super. at 490-91, 978 A.2d 295. But we determined that the statutes should be harmonized so as to give effect to the intention so clearly reflected in the laws directing the Commissioner's action. Id. at 490, 978 A.2d 295; see Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 12-17, 951 A.2d 987 (2008). Concluding that "the tenure law does not prohibit" what is *554 "authorized by [the] more recent statutes requiring the" Commissioner's action, we rejected the challenge based on the tenure law and upheld the regulations. Davy, supra, 409 N.J.Super. at 490, 978 A.2d 295.
I continue to adhere to the reasoning and holding in Davy. The basis for the holding is not the soundness of any policy committed to the responsibility of the Legislature. The holding is premised on two conclusions: 1) the Legislature's intent to have the Commissioner promulgate regulations affecting compensation despite the tenure law is apparent; and 2) the course the Legislature has chosen is not inconsistent with the Legislature's authority to specify the terms and conditions of public employment. See Spina, supra, 41 N.J. at 400, 197 A.2d 169. I cannot conclude that the Legislature was required to effectuate the reform by direct amendment to the tenure statute rather than by adopting these statutes directing the Commissioner to act. I emphasize that my view would have been different if the Commissioner had exceeded authority granted by the Legislature or the Legislature had outlined the reform it intended the Commissioner to effectuate with less clarity.
Since Davy was decided and, indeed, since we heard oral argument on this appeal, the Legislature has acted to supersede the Commissioner's regulation on payments for accumulated sick leave, N.J.A.C. 6A:23A-3.1(e)(6). That regulation is discussed in Part II, section D of the majority opinion. Ante at 550-52, 999 A.2d at 547-48.
The new statute, N.J.S.A. 18A:30-3.6 (L. 2010, c. 3, § 3 (approved March 22, 2010 to take effect on the 60th day following enactment, id. at § 14)), provides:

Notwithstanding any law, rule or regulation to the contrary, a board of education, or an agency or instrumentality thereof, shall not pay supplemental compensation to any officer or employee for accumulated unused sick leave in an amount in excess of $15,000. Supplemental compensation shall be payable only at the time of retirement from a State-administered or locally-administered retirement system based on the leave credited on the date of retirement. This provision shall apply only to officers and employees who commence service with the board of education, or the agency or instrumentality thereof, on or after the effective date [May 21, 2010]. This section shall not be construed to affect the terms in any collective negotiations agreement with a relevant provision in force on that effective date.
[(Emphasis added).]
If one assumes that N.J.A.C. 6A:23A-3.1(e)(6) would have applied to diminish payments for sick leave accumulated prior to the adoption of that regulation, but see Davy, supra, 409 N.J.Super. at 480-81, 978 A.2d 295, it is clear that N.J.S.A. 18A:30-3.6 now precludes that action. The Legislature has addressed the issue by statute and that statute applies "only to officers and employees who commence service" after May 21, 2010. For that reason, I believe the issues addressed in Part II, section D of the majority opinion are moot because the regulation has no continuing relevance on the points.
NOTES
[1] When this appeal was filed, the named defendants were Lucille E. Davy, Commissioner of Education of the State of New Jersey, and Anne Milgram, Attorney General of the State of New Jersey. We have amended the caption to name the current Commissioner and Attorney General.
[2] Subsequent to the filing of this appeal, the regulations were revised. The language we have set forth is the language in effect at the time plaintiffs filed this challenge. Neither party had addressed those revisions, and we express no opinion with respect to them.